## CLARKE cont^a LAMB

Hugh Clarke Administrato^r to the Estate of Joseph Buckmaster of Muddy River dece^d plaint. cont^a Abiel Lamb Defend^t in an action of trespass for comming upon the s^d Buckmasters Land & cutting and carrying away wood off the s^d Land according to attachm^t. . . . The Jury . . . found for the Defend^t costs of Court granted nine Shillings two pence.

[ This case, involving questions of administrators' powers, precipitates us into the middle of the litigation over the Buckminster (or Buckmaster) properties. In S. F. 2997 are fifty-two papers relating to the controversies which arose not only over the estate of Joseph Buckminster, but over that of his father, Thomas Buckminster, as well.

, Administration of the estate of Joseph Buckminster appears to have been granted in 1668 to Elizabeth, his widow, and to her father, Hugh Clarke; a mutilated copy of their bond for administration is in S. F. 2997.19. In his capacity as administrator, Clarke let to his son John, in 1669, the whole estate "vntill," as two witnesses later testified (S. F. 2997.30), "the heire Joseph Buckminster cum to the Age of twenty one yeares . . . for tenn pounds per Annum in the behalfe of Elizabeth Buckminster Widdow of the sayd Joseph deceased and her Children and this was done by the sayd widdows Aprobation and consent as shee did declare & Manifest to vs." The arrangement was confirmed in 1671; a copy of the agreement, undated and in fragmentary form, is in S. F. 2997.18.

In September, 1671, the Court of Assistants ordered as follows (S. F. 2997.8):

Jn Answer to the peticion of Hugh Clarke and Elisabeth Buckmstr Jt is ordered that Thomas Gardiner & m^r John Peirpoint shall & hereby are are Appointed a Comittee to lay out the peticon^r hir Just thirds as the law Directs.

The committee performed its function, and estimated "eight pounds a yeare in [Country pay to] bee a competent Rent" for the widow's portion (S. F. 2997.43).

The next January (1671/72), Elizabeth and her father made an agreement, the only surviving copy of which is badly damaged, but the general

1132

provisions of which can be deduced from the following extract (S. F. 2997.23):

. . . Whereas the s$^d$ Elizabeth Buckminster [wid]dow hath in hand received of the s$^d$ Hugh Clarke admin[istrator] to the Estate of the s$^d$ Joseph dec$^d$ [Sixty pounds] of the s$^d$ Estate, the s$^d$ Elizabeth Widdow doth [hereby] acknowledge the same and Shee being [therew$^{th}$ fully] Satisfied as her whole due from the s$^d$ Estate during the life of Joanna the wife of Edward Garfeild of Watertown (mother of the s$^d$ Joseph dec$^d$)[1] [Shee the said] Elizabeth Widdow doth hereby absolutely and [for ever acquit] and discharge her s$^d$ Father Hugh Clarke Administrato$^r$ his heires Exec$^{rs}$ Adm$^{rs}$ & Assignes of for and from the [said] Summe and every part thereof and Shee the s$^d$ [Elizabeth] Widdow doth hereby covenant promiss & grant to and [with] the s$^d$ Hugh Clarke her s$^d$ Father as Administrator [aboves$^d$] and to & with his heires Exec$^{rs}$ Adm$^{rs}$ and [assignes till] the death of the s$^d$ Joannah if it happen before [the] Children abovenamed Joseph Buckminster shalbee [one and] twenty yeares of age and his Sister Elizabeth shalbee Eighteen yeares of age that then her s$^d$ Children shall enjoy two full third parts of the cleere income of her s$^d$ husbands Estate, and that Shee shall and will bee content with one third part onely of the income of the same after all charges and payments due from [the s$^d$ Estate] is deducted; but upon the death of the s$^d$ [Joannah] Garfeild and when the s$^d$ Joseph & Elizabeth [the two] Children of the s$^d$ Elizabeth Widdow shalbee [at age] afores$^d$ the s$^d$ Elizabeth widdow doth then [expect] (after all debts and dues are abated & paid) [to enjoy] one full third of her s$^d$ Late husbands [whole and] cleer Estate, that the s$^d$ Joseph and Elizabeth [her] Children shalbee securely in legall [possession of and] the s$^d$ Elizabeth Buckminster widdow [doth hereby] also covenant promiss and grant to & [with her said] Father Hugh Clarke Administrato$^r$ [abovesaid his heires Executors] adm$^{rs}$ and assignes and all & every of them [that the] Sixty pounds which Shee hath now received [from him shal] bee deducted out of her third part of the [whole and] cleere Estate which then (& not till then) [she shall] receive: And for the full confirmation of the . . . abovewritten, both . . . Hugh Clarke and Elizabeth Buckminster widdow hath hereunto Set their hands & Seales this three and twentieth of January One thousand and Six hundred Seventy and one. . . .

Witnesses later testified (S. F. 2997.30) "that for the Covenant Between Elizabeth Buckminster And Hugh Clarke made the twenty third of January; That word Expressed Incum in the Covenant, it was then at the sealing manifested and declared by both parties to be the Income of the Rent only."

In the course of the next few years, the widow Buckminster married Abiel Lamb, who was apparently not satisfied with the existing state of affairs. In S. F. 2997.34 is recorded a vote of the Court of Assistants:

Upon the Motion of Abiell Lamb in behalf of his wife late widow of Joseph Buckmaster referring to her thirds of s$^d$ Josephs Estate, M$^r$ Thomas Weld &

---

[1] There had been litigation between Clarke as administrator and Goodwife Garfield in 1671. The latter had the use of part of her son's estate till her death. See the numerous papers bearing on this point in S. F. 2997 and S. F. 162105.

Thomas Garner sen$^r$ are appoynted a committee to repayre to sd Lands & set out her thirds according to law.

J Dudley. per order

8.7.77.

S. F. 2997.26

m$^r$ Thomas Weld and m$^r$ Thomas Gardiner appointed by the Honorable Court of Assistants Sep$^t$ 4. 1677. to lay out the thirds of the Estate of the late Joseph Buckmaster of muddy River to Abiel Lamb and Elizabeth his wife Relict of s$^d$ Joseph as by s$^d$ Order will appeare; make Oath that they did performe s$^d$ Order and have given Account thereof to the Court, And that it was part pasture and part plow Land to Satisfaction of said Lamb, and that the fence now in controversy stood upon s$^d$ Lambs third part dividing his pasture from his plow Land.

Thomas Gardiner further adds that hee was of the first Committee of Survay of the aboves$^d$ thirds and that they are now y$^e$ very same Lands not more nor less that was assigned by the first Committee.

Thomas Weld & Tho: Gardiner made Oath of what is above. before. J: D.

Vera Copia. J. Dudley A.

The next development of which we have any record is the present suit. Apparently it was part of an energetic campaign begun by Clarke at this time to retain entire control of the estate, as a petition of Abiel Lamb indicates:

S. F. 2997.10

To the Honoured Court of Assistance sitting in Boston the 2nd of March 16$\frac{78}{79}$

The petition of Abiel Lamb and Elizabeth his wife formerly the wife of Joseph Buckminster humbly sheweth that whereas our Honoured father Hugh Clark hath exhibited his petition before this Honoured Court in referance to the estate left by the said Buckminster to which estate your petitioners haue a Just right of thirds but could never yet Jnjoy it but haue been Very much wronged by our father Clark and his tennant our brother John Clark under pretence that the estate is indebted to them they making themselues Judges both of debt and Creddit your petitioners cannot well bear such wrong having need of their own and yet loath to Complain but not receiueing any rent for severall yeares nor like to doe for the future petitioned this Honoured Court not long since for a Comittie to lay out our thirds which accordingly was done but our father Clark and our brother John Clark his tennant upon the estate will not let us Jnjoy it peaceablely but haue petitioned this Honoured Court to call in their order for the laying of it out Jnsinuating as though your petitioners had obtained the saide order fallatiously which will apear to the Contrary if your petitioners may haue liberty to speak for themselues and produce such evidence in the case as will demonstrate to this Honoured Court what our Just right is and that we haue been unjustly kept from it by our father Clark which favour your petitioners humbly begs and that the Case may be Jssued without any farther trouble or suits of Law if possible and your petitioners and the Children of Joseph Buckminster secured from farther loss and dammage so your petitioners shall ever pray as in duty bound for your Honours peace.

Abiel Lamb

Clarke's petition, referred to in this document, has not been preserved. The Court of Assistants (Records, i. 158) replied to the petitions:

In the Case of Hugh Clarke & Abjel Lambe the Court sees no cause to abate of the last Court of Assistants Judgment.

Since the last previous reference to the Buckminster estate in the printed Records of the Court of Assistants is the order of September, 1677, to lay out the widow's thirds, this decision seems to constitute a victory for Lamb. In any case we find him at the session of the County Court in July, 1680, suing John Clarke for four years' rent of one-third of the Buckminster estate, at 4*l* per year. (Attachment, return, and bond in S. F. 2997.2.) Lamb was cast, and appealed on the following grounds (S. F. 2997.13):

1. For that it doth Cartainly appear that there is mony due from the farm to your appelant the law of the land giuing her that right to thirds of her husbands lands & the Court hauing set out the same to her & the Jury vpon the late triall confesing the same

2 that John Clarke defendant is occupant of said land and the plantiffe hath no other par[*torn*] for rent but vnto him it is cartaine he is [*torn*] for my thirds if not for the whole as Administratrix: to what was pleaded that J had Jmpowred my Father to let it to the now Tenant & therfor i was to seek rent of him, J Answer J haue Just reason to except .

1 against the wittneses being sons swearing for there father [1]

2 against the euidence that say accordingly by lease he did let it which lease appears not to be vnder my wifes hand neither doth that lease appear when dated nor euidence sworne to it

3 against the discretion of the old man in leting of it for tenn pound Countery pay, when by the wisest neighbours it is Judged worth Twelue pounds mony, who will also giue the same yearly for it

The Case is breifely this your appelant hath right by law to one third of land of her dead Husbands & to third of proffit during it being out of her hand she sueth John Clark occupant for about 4 years profit the said thirds worth 4$^{ll}$ mony per Ann$^{m}$ & common Law nor Justice directs her to no other way for payment, but what she hath taken.

Clarke answered (S. F. 2997.15):

1st Whereas your apellant saith that he hath right to one third pt of the farme therfor to the rent

answ$^{r}$ if that be granted yet no damage to the defend$^{t}$ nor to his case, nor indeed is it the case in controversy whether the apellant hath a right to a third p$^{t}$ of the farme: but the case is whether it be the defendants duty to pay rent to the apellant that nev$^{r}$ made any bargaine with him: but only with the ad-

---

[1] A reference to S. F. 2997.30, twice quoted above, which is signed by John Grosvenor and Uriah Clarke.

ministrato$^r$ & ingaged to pay rent to him: & so hath done: as: apeares by evidence in Court & to pay to both seems to be uniust

2ly Whereas the apellant saith: that I am his tenant & he hath no other to goe to for for his rent I answ$^r$: how I came to be his tenant I doe not yet know: I nev$^r$ rented any thinge of him: but of the administrato$^r$: therfor no reason to pay rent to the apeallant but if law say I must pay rent to the apealant: the defend$^t$ hopes he shall be salued vpon the administrato$^r$ w$^{th}$ whom he covenanted & whom he paid & not forced to pay both.

But 2ly whereas the apellant doth Implicitly say that his wife did impower her father to lett the estate as far as there is truth in the evidence: & so himselfe doth imply cleerly that y$^e$ administrato$^{rs}$ act is good in lettinge it to ye defend$^t$. But obiects against the evidence as illegall beinge sons for their father

answ$^r$ To which we say 1st that if the gentleman that writt these reasons were not deeply ingaged in the case the defend$^t$ would leaue it to him to Judge whether that a son & a son in law be not legall evidenc for or in a case concerninge their father but that is beyoind dispute we leave it to y$^e$ Court to Judge: if that were y$^e$ case: but the apellant is much mistaken when he saith the son is wittnesse for the father for the father was not defend$^t$ in the case: but the the controversy is betweene brother & sister & the evidence as neere related to the one as y$^e$ other therfor no reason to obiect against the evidence exept it be to cast dirt

2ly whereas the apellant obiects against the Lease as not beinge valid: not beinge dated as they say nor evidence sworne to it We answ$^r$ that the Lease$^r$ hath acknowledged his act in Court therfor no need of oaths neither any nessessity of his wifes hand to it she havinge impowred her father by covenant before & also consented to the lettinge of it to the defend$^t$ as apeares by the covenant & evidence in Court nor no law required it: it beinge no conveiance of title

3ly wheras the apellant obiects against the discrettion of the old man: if he had sd: his father he had shewed more maners. we answ$^r$ the old man as he is pleas$^d$ to call him: my aged father was not indiscreet in lettinge the land to cheap: for what ev$^r$ some may say that it will yeild more now yet at the time when it was let there were some of the neighbours as wise as the wisest spoken of in the reasons of apeall did Judge it [a] hard bargaine for the defend$^t$ which were the comittee apointed [by] the Hon$^{rd}$ Court of assistants to lay out the widdows thirds And indeed any mans reason will g[worn] that there may be great changes in so longe a time as the Lease expresseth & Indeed if the change of time had held ocasioned by the late wa[r] it would haue yeilded little or nothinge & the poore defend$^t$ paid all his rent then & therfor hath reason to haue the benefitt now if any be to be had.

The apeallant his last plea is that he hath a right to rent w$^{ch}$ we have answered in the answ$^r$ to the first reason: & for the second part of his plea. that he hath no other to goe to for rent but Jn$^o$ Clarke the apellant doth much forgett himselfe in so sayinge: for he hath receiued pt of his rent of his father the administrato$^r$ & might haue had the rest if he had pleased w$^{ch}$ makes the defend$^t$ doubt that he would have had rent from both: or else why should he sue the defend$^t$ when he had received pt of his rent before & might have had the remainer if he would haue come to an account with the administrato$^r$ as apeares by evidence in Court.

The Court of Assistants (Records, i. 165) reversed the former judgment and found 13$l$ 6$s$ 8$d$ for Lamb. In order to remove cause of further

friction, the County Court, in March 1680/81, replaced Hugh Clarke as administrator by Abiel Lamb, who was to pay fifty pounds to his father-in-law at the rate of eight pounds a year (S. F. 2997.11).

The habit of litigation seems to have become too deeply ingrained in the family, however, to be so easily eradicated: in July, 1682, Clarke sued his son-in-law unsuccessfully for one instalment of his compensation which he alleged had not been paid (S. F. 2997.12); and as late as 1691 we find John Clarke appointed attorney to the Suffolk County Treasurer to sue Lamb as administrator to the Buckminster estate (S. F. 2997.25).]